**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD SOWARD, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 19-cv-1830 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SHERWIN MILES, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Acting pro se, Richard Soward ("Petitioner") filed a 28 U.S.C. § 2254 petition for writ of habeas corpus. [1]; [6].[1] For the reasons explained below, the Court denies the petition and denies Petitioner's request for a certificate of appealability. Civil case terminated.

**I.     Background[2]**

   **A.     Factual Background**

In September 2008, the State of Illinois charged Petitioner, who goes by the nickname "Papa," with attempted murder, aggravated battery with a firearm, and other crimes based on allegations that he shot and paralyzed Priest Arnold. [9-1, at 2]. Petitioner and Arnold had known each other for 10 to 12 years. [*Id.*, at 3]. A few days after the two had a verbal altercation, Arnold was shot in the back and fell to the ground. [*Id.*]. At trial, Arnold testified that after he fell, he saw Petitioner approach him, point his gun at him, and unsuccessfully attempt to fire the gun. [*Id.*, at 3–4]. Petitioner fled as police and paramedics arrived. [*Id.*, at 4]. Later, Detective Adam Katz

---

[1] The petition was entered on the docket twice. Subsequent references to the petition cite only to [6].

[2] Because Petitioner does not argue that the state court erred in determining factual issues, such determinations are "presumed to be correct." § 2254(e)(1). Accordingly, this section relies upon the state court appellate decision for factual background.

asked Arnold who shot him, and Arnold responded, "Papa shot me." [*Id.*, at 6, 8]. Using this information, Detective Katz used a police database to compile an array of photos of people nicknamed Papa. [*Id.*, at 8]. Katz showed Arnold the photo array, and Arnold identified Petitioner's photo "almost immediately," saying "that's the one that shot me." [*Id.*]. Katz first tried to locate Petitioner by initiating an investigative alert, which is "used when the police are looking for a person they have probable cause to arrest." [*Id.*]. On August 28, 2008, believing that Petitioner may be in Indiana, Katz obtained a warrant for his arrest, learned that Petitioner was in custody in Indiana, and arrested Petitioner. [*Id.*, at 8–9].

### B. State Trial Court Proceedings

After a trial in the Circuit Court of Cook County, a jury found Petitioner guilty. Relevant to the § 2254 petition for before this Court, the following three exchanges occurred during the trial.

First, the government presented as a witness Officer Luis Gonzalez, who responded to the shooting. [*Id.*, at 5]. Prior to his testimony, defense counsel moved to exclude the portion of Gonzalez's testimony that "related to a conversation that he had with an unidentified African American woman shortly after the shooting at the scene of the crime." [*Id.*]. Counsel argued that this testimony was hearsay and would violate Petitioner's Sixth Amendment right to confrontation. [*Id.*]. The trial court determined that the woman's statement was inadmissible, but that under the "course of conduct exception to the hearsay rule," Gonzalez could testify both "that he had a conversation with the unidentified woman" and "as to what he did next in the course of his investigation." [*Id.*]. Gonzalez then testified that the woman approached him and spoke to him "as if she was trying not to be heard by anyone else," and that after this conversation, police began "looking for an African American male with the nickname Papa." [*Id.*, at 5–6]. Defense counsel did not request limiting instructions regarding this testimony. [*Id.*, at 13].

Second, during Arnold's cross-examination, defense counsel asked Arnold if he had smoked marijuana on the day of the shooting, and Arnold said that he had not. [*Id.*, at 4]. Counsel next asked Arnold what he told paramedics when they arrived. [*Id.*]. The State objected to this line of questioning and, during a sidebar, defense counsel stated that Arnold told paramedics that he had smoked marijuana the day of the shooting. [*Id.*]. The State objected because "the paramedics were not under subpoena," to which defense counsel responded that she hoped to have the paramedics testify the next day. [*Id.*]. Reasoning that defense counsel should have had the paramedics under subpoena, the trial court ruled that defense counsel could not question Arnold about what he told paramedics. [*Id.*, at 5]. Also during his cross-examination, Arnold responded "probably so" when asked whether he told the paramedics that "an unknown male Black shot [him]." [*Id.*, at 4].

Third, the State asked Katz "if the investigative alert was enough to get [Petitioner] arrested in the city of Chicago," and Katz answered affirmatively. [*Id.*, at 9]. Katz explained that he could have gotten an arrest warrant but doing so was not common practice "if an investigative alert can be used." [*Id.*]. Katz also testified that Petitioner had been in custody in Indiana. [*Id.*].

### C. Direct Appeal

Petitioner appealed from the jury verdict to the state appellate court. Relevant here, he first argued that the trial court violated his right to confrontation by allowing Gonzalez to refer to his conversation with the unidentified woman and by failing to issue limiting instructions regarding this testimony. [*Id.*, at 12–13]. Specifically, he argued that Gonzalez's testimony implied that the woman told Gonzalez that Petitioner had shot Arnold, and that this testimony was testimonial and went to the heart of the dispute. [*Id.*]. He also argued that the trial court should have instructed the jury that it could only consider the woman's statements to explain Gonzalez's actions and not

3

for the truth of the matter asserted. [*Id.*]. In response, the court explained that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." [*Id.*, at 17] (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)). The court found that Gonzalez's testimony fell within the course-of-investigation exception to the hearsay rule, that Gonzalez never revealed the substance of the woman's statements, and that the testimony was not offered for the truth of the matter asserted. [*Id.*]. Accordingly, the court determined that the trial court did not violate Petitioner's right to confrontation by admitting Gonzalez's testimony. [*Id.*]. And, it explained, because no hearsay was admitted, the trial court did not err by failing to give a limiting instruction. [*Id.*, at 18].

Petitioner also argued that his trial counsel was ineffective for three reasons. [*Id.*, at 19]. First, he argued that his counsel was ineffective for failing to request a limiting instruction for Gonzalez's testimony regarding the unidentified woman. [*Id.*, at 20 n.1]. The court stated that it "need not discuss this argument due to [its] previous finding that the trial court did not err in failing to give a limiting instruction." [*Id.*].

Next, Petitioner argued that his trial counsel was ineffective for failing to subpoena the paramedics. [*Id.*, at 19]. He claimed that "his defense at trial was that Arnold's first statements to the police were that an unknown black male shot him" and that Arnold's subsequent identification of Petitioner was not credible. [*Id.*]. He also claimed that the paramedics would have testified that Arnold told them he had used marijuana that day, and Petitioner argued that this testimony would impeach Arnold's testimony that he did not use drugs the day of the shooting. [*Id.*]. The court found that Petitioner's defense counsel was not deficient for failing to subpoena the paramedics because Petitioner was not prejudiced by this failure. [*Id.*, at 23]. That is, the court found that Petitioner did not establish "a reasonable probability that, but for counsel's unprofessional errors,

4

the result of the proceeding would have been different." [*Id.*, at 22] (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The court reasoned that Arnold himself agreed that it was "probably so" that he told paramedics that an unknown black male shot him, so that the lack of similar testimony from the paramedics would not have affected the outcome of the trial. [*Id.*, at 23]. Next, the court determined that even if defense counsel impeached Arnold using his inconsistent statements about his drug use, such "minor inconsistency with Arnold's testimony" would not have affected the outcome given the other evidence against Petitioner. [*Id.*].

Finally, Petitioner argued that his counsel was ineffective for failing to object to two portions of Katz's testimony. First, he argued that his counsel was ineffective for failing to object to Katz's testimony regarding the investigative alert. [*Id.*, at 20]. He contended that this failure was prejudicial because the jury could have inferred that "the police investigation was the equivalent of a judicial determination that the evidence was sufficient to charge [him]." [*Id.*, at 20]. The court noted that instead of objecting to this testimony, defense counsel "decided to focus on cross-examining [Katz] on his failure to obtain an arrest warrant for an extended period of time." [*Id.*, at 24]. The court determined that this decision was a reasonable trial strategy that did not prejudice the Petitioner. [*Id.*]. Second, Petitioner argued that his counsel was ineffective for failing to object to Katz's testimony that Petitioner was in custody in Indiana because this testimony "was the equivalent of other crimes evidence." [*Id.*, at 20]. The court explained that even if this testimony was other crimes evidence, "a defendant is not prejudiced by the admission of other crimes evidence if it does not have a tendency to 'overpersuade the jury' on the issue of the defendant's guilt." [*Id.*, at 25] (quoting *People v. Lewis*, 651 N.E.2d 72, 92 (Ill. 1995)). Here, the court noted, the jury heard only that Petitioner was in custody in Indiana and not the reason

5

why he was in custody. [*Id.*]. It concluded that the jury could not have been overpersuaded by such limited testimony.

Having rejected all of Petitioner's arguments relating to the validity of his conviction, the state appellate court upheld the jury's verdict.[3] Petitioner filed a leave to appeal to the Illinois Supreme Court [9-5], and the court denied the petition [9-6].

## II.     Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may only provide habeas relief if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). For a decision to be contrary to clearly established law, the decision must be "opposite to that reached by [the Supreme] Court on a question of law" or different from a Supreme Court decision with "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

## III.    Analysis

In Petitioner's § 2254 petition, he again argues that the trial court violated his Sixth Amendment right to confrontation by admitting Gonzalez's testimony and that his trial counsel was ineffective for the three reasons described above.[4] [6, at 5–8].

---

[3] The court found that the basis for the trial court's sentence was unclear, and it remanded for sentencing. [*Id.*, at 29].

[4] Petitioner also claimed that the trial court violated Illinois law when sentencing him. [1, at 5, 7]. In his reply brief, however, Petitioner stated that he "concedes that this issue is not cognizable on habeas review" because it is a state-law claim. [10, at 7]. Accordingly, the Court does not consider this claim, though the Court agrees that habeas relief is not available for claims based solely on state-law errors. See § 2254(a).

A.     **Right to Confrontation Claim**

Petitioner first argues that the trial court's admission of Gonzalez's testimony regarding his conversation with the unidentified woman violated his Sixth Amendment right to confrontation. [6, at 5, 7]. Under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial" are admissible only if "the declarant is unavailable" and "the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. It is true that here the unidentified woman was not available at trial and that Petitioner did not have the opportunity to cross-examine her. But Gonzalez's testimony did not include a testimonial hearsay; he stated that he spoke with the woman, but he did not relay any statements she made. [9-1, at 17]. Moreover, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. Here, Gonzalez's testimony explained the course of his investigation and was not meant to establish the truth of the unidentified woman's statement. See *Jones v. Basinger*, 635 F.3d 1030, 1045 (7th Cir. 2011) (explaining that limited use of out-of-court statements to explain the course of an investigation does not violate the Confrontation Clause).

In arguing otherwise, Petitioner cites to *Alford v. United States*, 282 U.S. 687 (1931), for the proposition that "[p]rejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." [10, at 3] (quoting *Alford*, 282 U.S. at 692). But *Alford* says nothing about the Confrontation Clause. It instead speaks to the permissible scope of cross-examination and therefore does not help Petitioner here. *Alford*, 282 U.S. at 694. Accordingly, the state court's determination that Gonzalez's statements did not violate Petitioner's right to

confrontation was not contrary to "clearly established Federal law," and Petitioner is not entitled to habeas relief on this issue. § 2254(d).

### B. Ineffective Assistance of Counsel Claim

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performances. *Strickland*, 466 U.S. at 687. The defendant must satisfy both components of the test or the claim will be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). Here, the state court based its decision on the prejudice prong. [9-1, at 23–26]. Under the that prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (quoting *Strickland*, 466 U.S. at 693, 697). Combining the *Strickland* and AEDPA standards, Petitioner "faces the obstacle of double deference. He must show the state court's decision is contrary to or involved an unreasonable application of the *Strickland* standard." *Hoglund v. Neal*, 959 F.3d 819, 833 (7th Cir. 2020), *cert. denied* 2020 WL 5883590 (U.S. Oct. 5, 2020).

Petitioner first argues that his counsel was ineffective for failing to request a limiting instruction regarding Gonzalez's testimony. [6, at 6]. Though Petitioner does not state what limiting instruction he claims his counsel should have requested [*id.*], the Court presumes that his habeas claim is the same as his direct appeal claim: that his counsel should have requested that the trial court instruct the jury that Gonzalez's testimony was limited to the purpose of explaining his investigation and not a proof that Petitioner was the shooter. [9-2, at 27]. The state court reasoned that a limiting instruction was unnecessary because Gonzalez's testimony did not include hearsay. [9-1, at 18]. And, it concluded, counsel's failure to request an unnecessary instruction cannot support an ineffective assistance of counsel claim. [*Id.*, at 20 n.1]. But even if the trial court should have given a limiting instruction, the failure of Petitioner's counsel to request one was not prejudicial error. Given the facts that Petitioner and Arnold had known each other for 10 to 12 years, that Arnold told Katz that Papa shot him, and that Arnold quickly identified Petitioner's photo from an array, there is not a "reasonable probability" that the instruction would have changed the outcome of the trial. *Strickland*, 466 U.S. at 690; see also *Wadley v. Gaetz*, 348 F. App'x 148, 151 (7th Cir. 2009) (finding no prejudicial error in part because of "the overwhelming evidence of guilt").

Petitioner next argues that his counsel was ineffective for failing to subpoena the paramedics because the paramedics would have testified that Arnold told them that an unknown black male shot him and that he had smoked marijuana earlier that day. [6, at 6, 8]. However, Petitioner does not sufficiently argue that, had his counsel subpoenaed the paramedics, "there is a reasonable probability that * * * the result of the proceedings would have been different." *Strickland*, 466 U.S. at 690. First, when asked if he had told the paramedics whether he was shot by an unknown black male, Arnold responded "probably so." [9-1, at 4]. Thus, the paramedics'

9

testimony on this point would have added little.  Second, their testimony would have revealed only a minor inconsistency in Arnold's testimony—whether he smoked marijuana that day.  Given the evidence against Petitioner, it cannot be said that the inability to impeach Arnold on this point resulted in prejudice.  See *Wadley*, 348 F. App'x at 151.  And it certainly cannot be said that the state court's determination on this issue is contrary to "clearly established Federal law." § 2254(d)(1).

Finally, Petitioner argues that his counsel provided ineffective assistance of counsel by failing to object to Katz's testimony regarding the investigative alert and to Katz's testimony that he arrested Petitioner when Petitioner was in custody in Indiana.  [6, at 6, 8].  On Petitioner's first argument, the state court reasoned that the failure to object to the investigative-alert testimony was a strategic choice.  [9-1, at 24].  On the second argument, the state court reasoned that even if the fact that he was in custody constituted other crimes evidence, Katz's testimony was admissible because it did not risk overpersuading the jury.  [9-1, at 25–26].  In his reply brief, Petitioner concedes both issues. Specifically, he "concedes that counsel's failure to object to the [investigative-alert] testimony was strategic trial strategy and [that] counsel's informed strategic choices are virtually unchallengeable." [10, at 7] (citing *Strickland*, 466 U.S. at 690 (explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable")).  He also "concedes that the [custody] testimony was admissible under Illinois's evidentiary rules." [10, at 7].  And even if Petitioner had not conceded these arguments, the Court would nevertheless agree with Respondent that the state proceedings on this issue were not contrary to "clearly established Federal law." § 2254(d).

## III.  Conclusion

The state court proceedings did not result in a decision that was contrary to "clearly established Federal law" or "that was based on an unreasonable determination of the facts." § 2254(d).  Accordingly, the Court denies Petitioner's § 2254 petition.  And because "reasonable jurists" could not debate this conclusion, the Court denies Petitioner's request for a certificate of appealability.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: October 23, 2020

_____
Robert M. Dow, Jr.
United States District Judge